IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATRICIA MAYFIELD,

          Plaintiff,

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

CIVIL ACTION FILE NO.

1:00-CV-2778-JFK

## **FINAL OPINION AND ORDER**

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for disabled widow's benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Mayfield filed an application for widow's insurance benefits on April 7, 1997. [R. at 27-28, 43, 54]. Plaintiff alleged that she became disabled on

September 1, 1971, due to panic and anxiety disorders, agoraphobia, diabetes, angina, chronic herniated disk, and personality disorders. [Id.]. After an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision on August 10, 1998, denying Plaintiff's claim. [R. at 159-71]. The Appeals Council denied her request for review, and Plaintiff filed a complaint in this court. Because the recording of the hearing was lost, this court remanded the case. [R. at 182, 218-36]. After another hearing was held on October 11, 2005, the ALJ issued a decision on December 7, 2006, denying Plaintiff's claim. [R. at 16-26, 269-323]. The Appeals Council denied a request for review. As a result, the decision of the ALJ stands as the final decision of the Commissioner. The case was reopened in this court in April of 2009, and Plaintiff seeks judicial review of the final decision. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that claimant Patricia Mayfield has anxiety and obsessive compulsive disorder. [R. at 23]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 24]. The

2

ALJ found that the claimant has the residual functional capacity to perform work at any exertional level with a number of limitations. [R. at 24]. The ALJ found that Plaintiff has no past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 25]. Accordingly, Plaintiff has not been under a disability from her alleged onset date through the date her prescribed period ended. [R. at 26]. The ALJ's decision [R. at 19-26] states the relevant facts of this case as modified herein as follows:

Although the claimant alleges disability since 1971, the earliest medical evidence of record dates to August 1, 1995, when the claimant was seen for diabetes mellitus. At that time, she was described as having some decrease in "pep and energy," and her medication was adjusted. (Exhibit 2F, p. 3). When seen on April 16, 1997, the claimant's husband had recently died. She was treated for uncontrolled diabetes, situational stress, and an upper respiratory infection. (Exhibit 2F, p. 1).

On June 26, 1997, the claimant was seen by James Fitzgerald, Ph.D., for a psychological examination. The claimant stated that she had not worked since 1971, when she became a primary homemaker. The claimant described mental problems including anxiety, phobias, and obsessive-compulsive problems. She stated that she did not drive because of fears. (Exhibit 4F, p. 1).

3

The claimant told Dr. Fitzgerald about her daily activities and conditions. Some of her allegations were inconsistent. The claimant claimed to have problems with obsessive-compulsive disorder yet described an incident of absentmindedness where she left food on the stove that had burned. (Exhibit 4F, p. 2). The claimant had a mildly dysphoric mood and mildly animated affect. The claimant's thought processes were lucid, rational, and clear, and her memory was intact. Her IQ scores were at or above average. (Exhibit 4F, p. 3). She was diagnosed with panic disorder, obsessive compulsive disorder, and dependent personality disorder. (Exhibit 4F, p. 4). At the hearing, the medical expert noted that Dr. Fitzgerald did not observe any symptoms of the diagnosed disorders and opined that the diagnosis was based upon the claimant's self-report.

The claimant was referred by her representative for an additional psychological evaluation, which took place on June 24, 2002. The claimant was seen by Dennis Herendeen, Ph.D. The claimant reported significant anxiety and situational depression. Dr. Herendeen noted somatic concerns and problematic personality complaints. The claimant reported problems with concentration but denied problems with antisocial behavior. (Exhibit 7F). At the hearing, Dr. Olin Hamrick, the medical expert, noted that Dr. Herendeen relied upon the claimant's self-report. He testified that the report

4

inventories no observations or an appropriate interview to understand the claimant's symptoms. Further, Dr. Hamrick stated that the claimant's self-report may have been over-exaggerated.

The claimant has received occasional chiropractic care since 1986 for back pain exacerbated by activity. (Exhibit 3F). She has not sought care from orthopedic specialists for her occasional back pain. Although the claimant's chiropractor has provided a list of diagnoses used since 1986, her back pain has been only occasional and more in the nature of sprain or overwork. There are no clinic notes to substantiate the diagnoses. The ALJ determined that the claimant has no medically determinable back impairment.

The claimant has been treated for diabetes by Judson Black, M.D. She has not been consistent with treatment. Dr. Black noted on October 27, 1997, that the claimant's medication had "done a very good job" but that "she has not been sticking to her diet totally well." (Exhibit 5F, p. 17). When seen on December 9, 1997, the claimant had developed proteinuria and was started on an ACE inhibitor. Despite a past referral, the claimant had never been to the Diabetes Resource Center. (Exhibit 5F, p. 9). At her next checkup, on March 20, 1998, the claimant had not been

following her diet and had not been taking medication as directed. She was scolded by Dr. Black, who noted that her condition "is clearly treatable." (Exhibit 5F, p. 2).

The ALJ found that although the claimant's diabetes has been "clearly treatable," she has failed to comply with prescribed diet and medications. Despite her noncompliance, there is no evidence as yet of irreversible organ damage. No vocationally relevant limitations stemming from diabetes have been described, either by the claimant or by Dr. Black.

At the hearing, the claimant testified about her impairments and limitations. She stated that she did not like to drive and that others drove her as needed. The claimant stated that she had planned for and hosted, as the ALJ labeled, an elaborate themed dinner party for five couples prior to the first hearing but that she had done nothing since that party. The claimant stated that she had seen Dr. Herendeen twice a week for five years; but there is no record of such visits. The claimant described recurrent panic attacks that require her to avoid being in a car, on a bridge, in an elevator, or in a crowd. However, the claimant later described her car as a "safe place." She described the attacks as a feeling of terror. She alleged transient panic attacks at home and did not know why they occurred.

AO 72A

(Rev.8/82)

The claimant stated that she cleans the floor twice a day. She does a lot of laundry because she washes clothing repeatedly. The claimant described a friend who checked up on her and a friend who visits or telephones. She was accompanied to the hearing by a friend of thirty-five years. The claimant testified that she likes having friends visit but that she has to clean up for them. She later stated that she gets three calls a day and has one friend. Despite her fear of public places, she stated that she goes out to eat with friends at lunch time. The claimant stated that she avoids malls and has not been in one for a year. She stated that she does not get her hair done professionally; a friend cuts it for her. She stated that she had her fingernails done on her birthday in January. She stated that her fingernails had most recently been manicured four months previously. The hearing took place in October. The ALJ observed and noted that the claimant's fingernails were beautifully painted and groomed and appeared to have been manicured more recently than four months earlier.

The claimant lived in the same house for over thirty years. She stated that she sold the home to a real estate developer. She dealt with the developer directly, which she described as a "two year ordeal." The claimant went to the attorney's office for the closing. A review of the real estate transaction records shows a 2.32 acre lot on the property was sold by the claimant on June 14, 2005, for approximately $450,000. Tax

records show that the total size of the lot inherited by the claimant from her husband was over 7.8 acres.

Dr. Hamrick, the medical expert, testified at the hearing that he had reviewed the record and attended to the testimony. Dr. Hamrick, as has been noted above, pointed out that the diagnoses of Dr. Fitzgerald and Dr. Herendeen were largely based upon the claimant's self-report. The medical expert testified that there is little support in the record for the claimant's alleged impairments: as the claimant testified, her sole treatment has been a prescription for Valium from her primary care physician. Given the alleged severity of the claimant's anxiety and obsessive-compulsive disorder, Dr. Hamrick stated that he would expect more treatment for and references to the disorders in the medical evidence of record. Given the claimant's intelligence and insight, he believes that she would have been referred for specialized treatment by her primary physician had her mental impairments been severe enough.

The claimant quit work in December of 1971, and her first child was born in February of 1972. She stayed home and cared for the family. When her husband died in 1997 and the claimant was faced with problems arising from his apparently failing business, she filed for disability on his earnings record.

AO 72A

(Rev.8/82)

## III. Standard of Review

A claimant may be eligible for widow's insurance benefits if she is between fifty and sixty years of age and has a disability which started within the period of time specified by the relevant statutory authority. <u>See</u> 42 U.S.C. §§ 402(e)(1)(B)(ii) and 402(e)(4); 20 C.F.R. § 404.335(c). Plaintiff Mayfield's husband died on March 29, 1997, and she applied for widow's insurance benefits in April 1997. She was fifty-two years old at the time of her application. [R. at 43, 281]. As the ALJ noted in her decision, Plaintiff carries the burden of showing that she is disabled and that her disability began on or before March 31, 2004, seven years after the death of her husband. [R. at 19-20]. <u>See</u> 42 U.S.C. § 402(e)(4); 20 C.F.R. § 404.335(c)(1).

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering

9

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited. The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work. If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

AO 72A

(Rev.8/82)

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim. <u>See</u> 20 C.F.R. §§ 404.1520(a) and 416.920(a). In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f). If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. <u>See</u> 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant is the unmarried widow of the deceased insured worker and has attained the age of fifty. The claimant meets the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

AO 72A

(Rev.8/82)

2. The prescribed period ended on March 31, 2004.

3. The claimant has not engaged in substantial gainful activity since September 1, 1971, the alleged onset date (20 C.F.R §§ 404.1520(b) and 404.1571, *et seq.*).

4. The claimant has the severe impairments of anxiety and obsessive compulsive disorder (20 C.F.R § 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R § 404.1520(d), 20 C.F.R § 404.1525 and 20 C.F.R § 404.1526).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at any exertional level. She is limited to simple tasks and to jobs with minimal changes in the workplace. The claimant must avoid work around public crowds.

7. The claimant has no past relevant work (20 C.F.R § 404.1565).

8. The claimant was born on August 15, 1941, and was thirty years old on the alleged disability onset date. She was fifty-five years old at the time of filing, which is defined as an individual of advanced age (20 C.F.R § 404.1563).

9. The claimant has at least a high school education and is able to communicate in English (20 C.F.R § 404.1564).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R § 404.1568).

AO 72A

(Rev.8/82)

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R §§ 404.1560(c) and 404.1566).

12. The claimant has not been under a "disability," as defined in the Social Security Act, from September 1, 1971, through the date her prescribed period ended (20 C.F.R § 404.1520(g)).

[R. at 21-26].

## V.    Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Patricia Mayfield had not engaged in substantial gainful activity since her alleged onset of disability on September 1, 1971. [R. at 21]. At the second step, the ALJ determined that the claimant has anxiety and obsessive compulsive disorder. [R. at 23]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or medically equal, either singly or in combination, one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 24]. The ALJ found at the fourth step of the sequential evaluation that the claimant has no past relevant work. [R. at 25]. At the fifth step, the ALJ concluded that Plaintiff is able to perform jobs which exist in significant numbers in the national economy, such as day worker, hospital cleaner or

13

housekeeper, and laundry worker. [R. at 25]. Therefore, the claimant has not been under a disability at any time from September 1, 1971, the alleged onset date, through March 31, 2004, the date her prescribed period ended. [R. at 26]. Plaintiff Mayfield argues that the ALJ committed errors when she failed to weigh or properly evaluate the opinions of two examining and two non-examining psychologists, when she assessed Plaintiff's mental and physical residual functional capacity ("RFC"),[1] and when the ALJ discredited Plaintiff's testimony. [Doc. 25].

### A.    Opinions of Psychologists and Plaintiff's Mental RFC

Plaintiff argues that the ALJ failed to weigh the opinions of two examining psychologists, Dr. James Fitzgerald and Dr. Dennis Herendeen, and erroneously relied on the opinion of Dr. Olin Hamrick, the medical expert. [Doc. 25 at 10-13]. Dr. Fitzgerald saw Plaintiff in June of 1997 for a psychological examination and diagnosed her with panic disorder, obsessive compulsive disorder, and dependent personality disorder. [R. at 128-31]. Plaintiff testified that she saw Dr. Herendeen for approximately five years, and he evaluated Plaintiff at least twice. [R. at 256-59, 285-86]. Dr. Herendeen stated in a letter that Plaintiff "reports a number of difficulties

_____

[1]Because Plaintiff's arguments regarding the psychologists' opinions and the ALJ's mental RFC are intertwined, the court will address them together.

14

consistent with a significant depressive experience" and that she demonstrated a

preoccupation with somatic concerns. [R. at 257]. Dr. Herendeen wrote, "These

somatic complaints are likely to be chronic and accompanied by fatigue and weakness

that renders the respondent incapable of performing even minimal role expectations."

[R. at 257]. Dr. Herendeen also noted that Plaintiff "describes a number of

problematic personality traits," "reports problems of many different types," and that

a "number of aspects of the respondent's self-description suggest noteworthy

peculiarities in thinking and experience." [Id.].

The ALJ is required to "state specifically the weight accorded to each item of

evidence and why he reached that decision." Cowart v. Schweiker, 662 F.2d 731, 735

(11th Cir. 1981). "In the absence of such a statement, it is impossible for a reviewing

court to determine whether the ultimate decision on the merits of the claim is rational

and supported by substantial evidence." Id. In the present case, the ALJ described the

findings of Dr. Fitzgerald and Dr. Herendeen, but the ALJ made it clear that she did

not grant significant weight to their opinions. The ALJ noted that at the administrative

hearing, Dr. Hamrick "pointed out that the diagnoses of Dr. Fitzgerald and Dr.

Herendeen were largely based upon the claimant's self-report." [R. at 22-24].

With respect to the limitations found by Dr. Fitzgerald, the ALJ cited Dr. Hamrick's testimony about the lack of supporting evidence in the record. Dr. Hamrick testified:

> There's no indication in the report that Dr. Fitzgerald observed any evidence of panic disorder, or agoraphobia, or obsessive-compulsive disorder, or dependent personality. The testing that Dr. Fitzgerald did was IQ and academic achievement, and testing to assess a screening for brain dysfunction, and there was nothing in those test results that would really be consistent or inconsistent with the diagnosis.

[R. at 274-75]. With regard to Dr. Herendeen's opinion, Dr. Hamrick correctly stated that the psychologist noted a possibility that the elevated levels across several scales of Plaintiff's personality assessment inventory "may over-represent or exaggerate the actual degree of psychopathology." [R. at 256, 275]. Dr. Hamrick also pointed out, "[T]here's nothing in the record that indicates any significant treatment for anxiety or depression other than the prescription for Valium, which she used on a PRN, or as-needed, basis; there's no indication of any mental health treatment. . . ." [R. at 276].

The ALJ wrote: "Given the alleged severity of the claimant's anxiety and obsessive-compulsive disorder, Dr. Hamrick stated that he would expect more treatment for and references to the disorders in the medical evidence of record. " [R. at 22]. Plaintiff's primary care physician was Dr. Judson Black, and the ALJ noted

16

that Dr. Black mentioned situational stress in his treatment notes. [R. at 117-26, 132-50, 264-68, 280]. However, Dr. Black never referred Plaintiff for specialized treatment to address her mental impairments. Dr. Hamrick testified that in light of Plaintiff's intelligence and insight, he did not believe that Plaintiff's mental impairments were particularly severe given the fact that Dr. Black did not refer her for specialized treatment. [R. at 22, 312-14].

For these reasons, the court finds that the record supports Dr. Hamrick's testimony regarding the two examining psychologists' opinions. [R. at 22-24]. This is significant because the opinions of medical experts such as Dr. Hamrick are entitled to weight from the ALJ insofar as these opinions are supported by evidence in the case record. SSR 96-6p. A reasonable mind might accept Dr. Hamrick's testimony as adequate to support the ALJ's decision not to grant significant weight to the opinions of Dr. Fitzgerald or Dr. Herendeen. See Bloodsworth, 703 F.2d at 1239. The ALJ is not a psychologist, and it was not erroneous for her to rely on the testimony of a medical expert who had the benefit of reviewing Plaintiff's complete case record. SSR 96-6p. The ALJ also explained her reasoning, which she was required to do. Cowart, 662 F.2d at 735. The undersigned, therefore, concludes that remand is not warranted

17

on the basis of the ALJ's evaluation of the opinions of Dr. Fitzgerald and Dr. Herendeen in light of Dr. Hamrick's testimony.

Plaintiff Mayfield next argues that the ALJ failed to properly evaluate the opinions of two non-examining psychologists, Dr. Paul Ginn and Dr. Robert Coyle, who completed assessments of Plaintiff's mental RFC in 1997. [R. at 97-99, 113-15]. In Part I of his RFC assessment, Dr. Ginn indicated that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances. [R. at 113]. Dr. Ginn also found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to travel in unfamiliar places or use public transportation. [R. at 114].

Dr. Coyle, the other non-examining psychologist, indicated in Part I of his assessment of Plaintiff's mental RFC that she was moderately limited in her ability to

18

maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, and to work in coordination with or proximity to others without being distracted by them. [R. at 97]. Dr. Coyle also found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. [R. at 98]. In Part III of his assessment, which is the narrative portion, Dr. Coyle wrote that: Plaintiff can comprehend/carry out simple and detailed tasks; at times, she would have difficulty keeping up with a schedule and maintaining concentration, persistence, and pace due to anxiety; she would tend to initially be anxious when working around strangers or large groups; she can behave appropriately in social situations and can accept supervision; she would take somewhat longer than coworkers to adapt to changes in work procedures; and at times, she would need help with setting realistic goals. [R. at 99, 278-79]. Dr. Hamrick testified that he agreed with the limitations found by the non-examining psychologists. [R. at 279].

19

As noted *supra*, the ALJ is required to state the weight she has given to each item of evidence, and she must explain her reasoning for reaching that decision. Cowart, 662 F.2d at 735. In the present case, the opinions of Dr. Ginn and Dr. Coyle were discussed during the administrative hearing and were confirmed by Dr. Hamrick, but the ALJ made no mention of these psychologists' opinions in her written decision. [R. at 278-79]. Moreover, the court finds that the ALJ's RFC assessment did not include the mental limitations found by Dr. Ginn and Dr. Coyle and confirmed by Dr. Hamrick.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis v. Callahan,125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a) and 404.1520(f)). In determining the claimant's RFC, the ALJ is required to consider the limiting effects of all the claimant's impairments, even those that are not severe. See 20 C.F.R. § 404.1545(e); Phillips v. Barnhart, 357 F.3d 1232, 1238-39 (11th Cir. 2004) ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case.").

20

The ALJ stated in her decision that she found that Plaintiff "has the residual functional capacity to perform work at any exertional level. She is limited to simple tasks and to jobs with minimal changes in the workplace. The claimant must avoid work around public crowds." [R. at 24]. This is the extent of the ALJ's RFC assessment. The Commissioner argues that "the ALJ's RFC finding encompassed all of the functional limitations noted by Dr. Ginn and Dr. Coyle." [Doc. 26 at 11]. The Commissioner also argues that the only portion of Dr. Ginn's and Dr. Coyle's assessment that needed to be considered was Part III of the mental RFC form, which is the narrative portion. Citing the Program Operations Manual System ("POMS"), the Commissioner contends that although Plaintiff relies on the psychologists' notations in Part I to support her argument, this check block portion of the RFC form did not need to be addressed by the ALJ because that section is "merely a worksheet" and "does not constitute the RFC assessment." [Doc. 26 at 13-15]. The court finds the Commissioner's arguments on this issue to be unpersuasive.

With regard to Dr. Ginn's findings, the ALJ and Dr. Hamrick agreed at the administrative hearing that Dr. Ginn's handwriting in Part III of the RFC form is illegible. [R. at 115, 278]. Therefore, while the Commissioner correctly notes that the POMS states that Part I of the RFC form is "merely a worksheet," the only information

AO 72A

(Rev.8/82)

available to the ALJ regarding Dr. Ginn's assessment of Plaintiff's limitations was found in Part I, which is the check block portion of the RFC form. [R. at 113-14]. And as Plaintiff points out, because Part III of the form asks the medical source to explain in narrative form the findings of Part I, "there must be a logical connection between the two sections." [Doc. 27 at 5]. Dr. Ginn found in Part I of the form that Plaintiff was moderately limited in a number of areas that were not included in the ALJ's RFC assessment, such as the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. [R. at 113-14]. The "RFC assessment must be based on all of the relevant evidence in the case record. . . ." SSR 96-8p. The ALJ was not permitted to ignore Dr. Ginn's findings in Part I of the RFC form simply because Part III was illegible.

Even if it were proper for the ALJ to ignore Dr. Ginn's findings and only consider Dr. Coyle's assessment as described in Part III, the narrative portion of the form, the ALJ's RFC was still erroneous because it did not include all the limitations found by Dr. Coyle. [R. at 99]. The ALJ only included three limitations in her RFC.

22

She found that Plaintiff was limited to jobs that: only involve simple tasks; have minimal changes in the workplace; and include no work around public crowds. [R. at 24]. These limitations addressed Dr. Coyle's findings that Plaintiff would take somewhat longer than coworkers to adapt to changes in work procedures and that she would have initial anxiety when working around large groups. [R. at 99]. However, the ALJ's RFC did not include Dr. Coyle's findings that Plaintiff: at times, would have difficulty keeping up with a schedule and maintaining concentration, persistence, and pace due to anxiety; would tend to initially be anxious when working around strangers; and at times, would need help with setting realistic goals. [R. at 99].

While the ALJ was not required to adopt the opinions of the consultative psychologists, she was required to describe the weight she accorded them and explain her reasoning. <u>Cowart</u>, 662 F.2d at 735. The ALJ, however, not only failed to describe the weight she accorded to the opinions of Dr. Ginn and Dr. Coyle, she did not mention these opinions at all. The ALJ also did not include the limitations found by the consultants in her RFC assessment, even though the limitations were confirmed by the medical expert Dr. Hamrick. Given the fact that the ALJ relied upon Dr. Hamrick and apparently agreed with his findings, the court concludes that substantial evidence does not support the ALJ's decision. The court, therefore, **ORDERS** that the

AO 72A
(Rev.8/82)

ALJ's decision be **REVERSED** and that the case be **REMANDED** for further proceedings in accordance with the discussion *supra*. Because remand is warranted on this basis, an extensive discussion of Plaintiff's additional arguments is not necessary. The court, nevertheless, will briefly address these arguments in order to provide the ALJ with further guidance upon remand.

### B.    Additional Arguments Made by Plaintiff

Plaintiff argues that the ALJ's RFC assessment does not include any limitations that result from her obsessive compulsive disorder ("OCD"), despite the fact that the ALJ found this to be a severe impairment. [Doc. 25 at 16]. Because an impairment is considered severe if it interferes with the claimant's ability to work, the ALJ's finding that Plaintiff's OCD was a severe impairment means that the ALJ believed that it caused some limitations on Plaintiff's ability to perform work activities. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); 20 C.F.R. § 404.1521(a). However, it is not clear whether the ALJ's RFC assessment (limited to simple tasks, jobs with minimal changes, and avoidance of public crowds) encompasses any mental limitations that would be expected to result from Plaintiff's OCD.[2] [R. at 24]. Upon remand, if

_____

[2]As Plaintiff notes [Doc. 25 at 16], the National Institute of Mental Health describes OCD as an anxiety disorder characterized by recurrent, unwanted thoughts (obsessions) and/or repetitive behaviors (compulsions). See http://www.nimh.nih.gov/

AO 72A

(Rev.8/82)

the ALJ again finds that Plaintiff's OCD constitutes a severe impairment, then she should articulate what, if any, additional mental limitations result from this impairment.

Plaintiff next makes a brief argument that the ALJ failed to properly evaluate her diabetes when the ALJ found that it did not cause any physical limitations. [Doc. 25 at 17-18]. Plaintiff contends that the ALJ erred when she imposed "no exertional limitations on a woman who carries a diagnosis of diabetes with significant nephropathy and peripheral neuropathy." [Id.]. The deficiency in Plaintiff's argument is that a diagnosis does not mean that she actually experienced functional limitations as a result of the diagnosed condition. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting that "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). The ALJ explained in her decision that neither Plaintiff nor her treating physician described any vocationally relevant limitations stemming from Plaintiff's diabetes, which her physician classified as "clearly treatable." [R. at 24]. Because Plaintiff has pointed to no evidence in the record of a physician's opinion that

---

health/topics/obsessive-compulsive-disorder-ocd/index.shtml (last visited December 30, 2009).

AO 72A
(Rev.8/82)

her diabetes caused any work-related limitations, the court finds that Plaintiff has failed to show that the ALJ committed error when she did not include any exertional limitations in the RFC.

Plaintiff's final argument is that the ALJ failed to properly evaluate her credibility. [Doc. 25 at 18-23]. Where a claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony. See Viehman v. Schweiker, 679 F.2d 223 (11th Cir. 1982); Scharlow v. Schweiker, 655 F.2d 645 (5th Cir. 1981). If a claimant's testimony is critical in the ALJ's determination, the ALJ must articulate any reasons for discrediting the claimant's testimony. See Viehman, 679 F.2d at 228.

In the present case, the ALJ gave numerous reasons for finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [R. at 22]. The ALJ, for example, noted inconsistencies in Plaintiff's testimony. The ALJ wrote, "She stated that her car causes her to panic and then later described the car as a 'safe place.' The claimant described 'one friend' and then described multiple friends." [R. at 22]. In addition, the ALJ pointed out that despite Plaintiff's "allegations of disabling anxiety and obsessive-

26

compulsive disorder," she testified that she has lunch out with her friends and that the only medication she takes for mental health is Valium. [Id.].

The ALJ also noted that the medical expert, Dr. Hamrick, testified that in light of Plaintiff's intelligence and insight, he did not believe that Plaintiff's mental impairments were particularly severe given the fact that her treating physician, Dr. Black, did not refer her for specialized treatment. [R. at 22, 312-14]. The ALJ wrote: "Given the alleged severity of the claimant's anxiety and obsessive-compulsive disorder, Dr. Hamrick stated that he would expect more treatment for and references to the disorders in the medical evidence of record. " [R. at 22]. Plaintiff contends that "Dr. Hamrick never claimed that Mayfield had intelligence and insight. . . ." [Doc. 25 at 22]. This is not correct as Dr. Hamrick testified to the following at the administrative hearing:

> There is very effective medication and cognitive behavioral therapy that would be expected to be effective with a woman who's as intelligent, and articulate, and has capacity for insight and self-awareness, as [Plaintiff] does. And I would suggest that, if her condition had been severe enough to attract the attention of, of her medical provider, she would have been referred for treatment, and I don't see that that's been the case.

[R. at 313]. The ALJ's decision on this issue was consistent with Social Security Ruling 96-7p, which provides, in part: "[T]he individual's statements may be less

AO 72A
(Rev.8/82)

credible if the level or frequency of treatment is inconsistent with the level of complaints. . . ."

Plaintiff argues, however, that there is no evidence that the ALJ considered Plaintiff's proffered reasons for not receiving mental health treatment. Social Security Ruling 96-7p states that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide. . . ." During the hearing, the ALJ asked Plaintiff why she had not received mental health treatment, and she responded, "[W]hen my husband was alive and I had insurance, I did see Dr. Herandine (sic) twice a week for probably five years." [R. at 285]. Her testimony is consistent with statements made in a 1997 letter written by Mary Goldberg, a social worker who is a friend of Plaintiff. [R. at 86]. Ms. Goldberg stated that she referred Plaintiff to Dr. Herendeen in 1983 or 1984 but that Plaintiff had to discontinue her sessions due to financial reasons. [R. at 86]. Social Security Ruling 96-7p lists the inability to afford medical treatment as an example of a legitimate explanation offered by a claimant for not seeking treatment. Plaintiff also points out that while the ALJ cited Plaintiff's involvement in the sale of her home as evidence that she leads a normal, active life, the ALJ failed to note that Plaintiff testified that the

28

development company handled all aspects of the transaction. [R. at 309-10]. Upon remand, the ALJ should consider Plaintiff's explanations regarding her lack of mental health treatment and her involvement in the sale of her home.

## VI. Conclusion

For the foregoing reasons and cited authority, the court finds that the decision of the ALJ was not supported by substantial evidence. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** for further proceedings in accordance with the above discussion. See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Clerk is **DIRECTED** to enter judgment accordingly.

In the event that benefits are awarded on remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

AO 72A

(Rev.8/82)

**SO ORDERED**, this 7th day of January, 2010.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE